UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ROCHELLE GARCIA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. EDCV 15-1369 AJW <br><br> MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff alleges disability beginning on January 1, 2000 due to bipolar disorder, depression, heart problems, joint pain, fluid in her lungs, weight gain, anxiety, and seizures. [Administrative Record ("AR") 75, 138]. After an administrative hearing, the Administrative Law Judge ("ALJ") issued a January 9, 2014 written decision denying benefits. [AR 7-19]. The ALJ found that plaintiff had the following "severe" impairments: mood disorder, recent history of substance abuse in remission, and obesity. [AR 12]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to "perform less than a full

1  range of medium work . . . . Specifically, [plaintiff] can lift and/or carry 50 pounds occasionally and 25
2  pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular
3  breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she is limited to non-
4  complex routine tasks, and is precluded from tasks requiring hypervigilance, or the responsibility for the
5  safety of others; [plaintiff] is precluded from work requiring contact with the public or involving fast[-
6  ]paced assembly or conveyor belt work." [AR 14]. The ALJ found that plaintiff had no past relevant work.
7  [AR 18]. Based on the testimony of a vocational expert ("VE"), the ALJ determined that plaintiff could
8  perform alternate jobs that exist in significant numbers in the national economy. Accordingly, the ALJ
9  found that plaintiff was not disabled at any time through the date of his decision. [AR 19]. On May 21,
10 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision. [AR 1-3].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Inconsistency with information in the Dictionary of Occupational Titles**

Plaintiff argues that the ALJ erred at step five[1] in determining that she could perform the alternate

---

[1] The five-step sequential analysis applicable to disability determinations examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe,

2

1 jobs of laundry laborer, industrial cleaner, and dryer attendant. Specifically, plaintiff contends that the
2 requirements of those jobs as set forth in the Dictionary of Occupational Titles ("DOT") are inconsistent
3 with her RFC. [JS 38].

4   At step five, the Commissioner has the burden of establishing, through the testimony of a VE or by
5 reference to the Medical-Vocational Guidelines, that the claimant can perform alternative jobs that exist in
6 substantial numbers in the national economy. Bruton v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001).
7 "Where the testimony of a VE is used at step five, the VE must identify a specific job or jobs in the national
8 economy having requirements that the claimant's physical and mental abilities and vocational qualifications
9 would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

10   Under Ninth Circuit law and Social Security Ruling ("SSR") 00-4p[2], an ALJ may not rely on a VE's
11 testimony regarding the requirements of a particular job without first inquiring whether that testimony
12 conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007); see Johnson v. Shalala,
13 60 F.3d 1428, 1435 (9th Cir. 1995) (noting that a rebuttable presumption exists that the job classification
14 information in the DOT controls, and stating that an ALJ may rely on expert testimony that contradicts the
15 DOT "only insofar as the record contains persuasive evidence to support the deviation") (citing Villa v.
16 Heckler, 797 F.2d 794, 798 (9th Cir. 1986)). A VE's testimony may give rise to a conflict with the DOT
17 "in at least two different ways. First, the [VE] may testify that a particular job requires a particular
18 exertional or skill level, when the DOT expressly provides that the job requires a different exertional level."
19 Carey v. Apfel, 230 F.3d 131, 144 n.2 (5th Cir. 2000). "A second, and different type of conflict may arise

---

21 whether the impairment meets or equals a listed impairment, whether the claimant is able to do his
 or her past relevant work, and whether the claimant is able to do any other work. Lounsburry v.
22 Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

23  [2] Social security rulings "are binding on all components of the Social Security Administration
 [SSA]" and represent
24

25   final opinions and orders and statements of policy and interpretations of the SSA.
  SSRs reflect the official interpretation of the SSA and are entitled to some deference
26   as long as they are consistent with the Social Security Act and regulations. SSRs do
  not carry the force of law, but they are binding on ALJs nonetheless.
27

28 Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (internal quotation
 marks, citations, alteration, and footnote omitted).

when the [VE's] testimony places the ALJ's finding with respect to the claimant's residual functional capacity or the claimant's specific impairments in conflict with the exertional or skill level or the specific skills required for the identified jobs in the DOT." Carey, 230 F.3d at 144 n.2.

Neither the DOT nor the VE's testimony "automatically trumps when there is a conflict." Massachi, 486 F.3d at 1153 (footnote omitted). If an apparent conflict exists, the ALJ must obtain an explanation for it, determine whether the VE's explanation is reasonable, decide whether a basis exists for relying on the VE rather than on the DOT, and explain how he or she resolved the conflict. Massachi, 486 F.3d at 1152-1153; see SSR 00-4p, 2000 WL 1898704, at *2-*4 (stating that before an ALJ can rely on VE testimony, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs" and information in the DOT and "its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles," and to "[e]xplain in the determination or decision how any conflict that has been identified was resolved"). This procedural requirement "ensure[s] that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." Massachi, 486 F.3d at 1153.

At the administrative hearing, the VE testified that someone with plaintiff's limitations could perform the following three occupations: (1) laundry laborer (DOT job no. 361.687-018); (2) cleaner (DOT job no. 381.687-018); and (3) dryer attendant (DOT job no. 581.686-018). [AR 41-42]. The VE further testified that her testimony was consistent with the DOT. [AR 42-43]. Based on the VE's testimony, the ALJ concluded that plaintiff retained the ability to perform jobs existing in significant numbers in the national economy. [AR 19].

**Laundry Laborer**

The DOT describes the duties of a laundry laborer as follows:

> Prepares laundry for processing and distributes laundry, performing any combination of following duties: Opens bundles of soiled laundry. Places bundles onto conveyor belt or drops down chute for distribution to marking and classification sections. Weighs laundry on scales and records weight on tickets. Removes bundles from conveyor and distributes to workers, using handtruck. Fastens identification pins or clips onto laundry to facilitate subsequent assembly of customers' orders. Sorts net bags containing clean wash according

>to customers' identification tags. Sorts empty net bags according to color and size. Collects identification tags from lots of laundered articles for reuse. Moistens clean wash preparatory to ironing. Operates power hoist to load and unload washing machines and extractors. Stacks linen supplies on storage room shelves. Unloads soiled linen from trucks.

DOT job no. 361.687-018, available at 1991 WL 672992.

Plaintiff contends that the job of laundry laborer is precluded by her RFC limitation from tasks requiring hypervigilance and fast paced assembly or conveyor belt work. Specifically, she contends that this job "would require [her] to place bundles onto a conveyor belt and remove bundles from a conveyor as well." Further, she argues that hypervigilance is required when "load[ing] and unload[ing] washing machines and extractor with a power hoist . . . so that the machines are not damaged and no one gets hurt." [JS 5].

Plaintiff's argument lacks merit. The ALJ only precluded plaintiff from performing fast-paced work, not all work involving a conveyor belt. [See AR 14; see also AR 41]. Nothing in the DOT description of the job of laundry laborer indicates that it requires fast-paced work. See DOT job no. 361.687-018, available at 1991 WL 672992. The fact that the job of laundry laborer might incorporate some conveyor belt work "does not necessarily translate into the type of fast-paced work from which plaintiff is precluded." Peralez v. Astrue, 2013 WL 66944, at *1 (C.D. Cal. Jan. 3, 2013) (holding that an RFC precluding fast-paced work did not conflict with the DOT description of the job of hand packer even though that job "might incorporate some assembly line work"); see also Townsend v. Colvin, 2013 WL 5522048, at *3 (C.D. Cal. Oct. 3, 2013) (holding that no conflict existed between the DOT and a VE's testimony that someone with the claimant's RFC could perform the job of warehouse worker where the claimant was precluded from fast-paced work, and the DOT description of the job of warehouse worker contained no indication that the job is fast-paced); Woodbury v. Astrue, 2011 WL 5570139, at *5 (C.D. Cal. Nov. 16, 2011) (holding that the ALJ did not err in finding that the claimant could perform the job of production helper even though his RFC precluded fast- paced work, and even though one possible task of a production helper is to remove material from food on conveyor belt).

Similarly, the DOT does not indicate that hypervigilance is needed to perform any of the tasks listed for the job of laundry laborer. Plaintiff offers no support for her conclusory assertion that operating a power

hoist to load and unload washing machines requires hypervigilance. See, e.g., Ruiz v. Colvin, 2014 WL 1654026, at *6 (C.D. Cal. April 25, 2014) (noting that the plaintiff cited "no authority for her conclusory assertion that the job of hand packager as described in the DOT requires 'hypervigilance' or 'fast-paced work'"); Hacker v. Colvin, 2013 WL 5886027, at *2 (C.D. Cal. Oct. 30, 2013) (rejecting the plaintiff's argument that a cleaner job requires hypervigilance because it involved cleaning machines, overhead pipes, and conveyors and might require operating a truck, and noting that "[w]orking with machines, even dangerous machines, does not require hypervigilance"); Luster v. Colvin, 2013 WL 4479090, at *5 (C.D. Cal. Aug. 19, 2013) (holding that the plaintiff's "unsupported assertions do not establish that there is any conflict" between the DOT description of the job of counter clerk "and the VE's testimony that an individual precluded from fast-paced work and hypervigilance can perform the job of counter clerk"); Lair v. Colvin, 2013 WL 1247708, at *4 (C.D. Cal. Mar. 25, 2008) (rejecting the claimant's argument that working with "dangerous machines" would require hypervigilance).

Since plaintiff fails to demonstrate any conflict between the DOT description of the job of laundry laborer and the VE's testimony, the ALJ did not err in finding that plaintiff could perform that job. See generally Wester v. Colvin, 2015 WL 4608139, at *6 (C.D. Cal. July 31, 2015) (noting that the ALJ was entitled to rely on VE's testimony "when [the] DOT description does not, on its face, conflict with the claimant's RFC"); McBride v. Comm'r of Soc. Sec. Admin., 2014 WL 788685, at *8-*9 (E.D. Cal. Feb. 25, 2014) (holding that ALJ justifiably relied on VE's testimony where there was no apparent conflict between the VE's testimony and the DOT).

**Industrial Cleaner**

The DOT describes the duties of an industrial cleaner as follows:

Keeps working areas in production departments of industrial establishment in clean and orderly condition, performing any combination of following duties: Transports raw materials and semifinished products or supplies between departments or buildings to supply machine tenders or operators with materials for processing, using handtruck. Arranges boxes, material, and handtrucks or other industrial equipment in neat and orderly manner. Cleans lint, dust, oil, and grease from machines, overhead pipes, and conveyors, using brushes, airhoses, or steam cleaner. Cleans screens and filters. Scrubs processing tanks and vats.

>Cleans floors, using water hose, and applies floor drier. Picks up reusable scrap for salvage and stores in containers... May burn waste and clean incinerator. May pick up refuse from plant grounds and maintain area by cutting grass or shoveling snow. May operate industrial truck to transport materials within plant. May start pumps to force cleaning solution through production machinery, piping, or vats. May start pumps to lubricate machines.

DOT job no. 381.687-018, available at 1991 WL 673258.

Plaintiff contends that she cannot perform the job of industrial cleaner because her RFC precludes tasks requiring hypervigilance and public contact. Specifically, she contends that this job "would require [her] to clean lint, dust, oil, and grease from machines, overhead pipes, and conveyors, using brushes, airhoses, or steam cleaner, may burn waste and clean incinerator, and may operate an industrial truck to transport materials within plant." According to plaintiff, "[a]n individual performing these types of tasks must be hypervigilant while performing them, so he or she does not get hurt, hurt anyone else present, or damage/destroy equipment or machinery around the plant." Further, she contends that the job of industrial cleaner "would require [her] to keep working areas in production departments of [an] industrial establishment in clean and orderly condition, to transport raw materials and semifinished products or supplies between departments or buildings to supply machine tenders or operators with materials for processing, she would be required to be out in the plant grounds to pick up refuse and maintain the area, and she would transport material within the plant." According to plaintiff, these tasks require public contact. [JS 6].

Plaintiff offers no evidence in support of her contention that the job of industrial cleaner as described in the DOT requires hypervigilance. As discussed above, "[w]orking with machines, even dangerous machines, does not require hypervigilance." Hacker, 2013 WL 5886027, at *2 (rejecting the plaintiff's argument that a cleaner job requires hypervigilance because she would have to clean machines, overhead pipes, and conveyors and might have to operate a truck); Lair, 2013 WL 1247708, at *4 (rejecting the plaintiff's argument that working with "dangerous machines" would require hypervigilance).

Similarly, plaintiff has failed to cite any evidence in support of her allegation that the job of industrial cleaner requires public contact. At most, the listed duties of the job appear to involve some interaction with co-workers, not with the public. See DOT job no. 381.687-018, available at 1991 WL

673258. The ALJ did not preclude plaintiff from interacting with co-workers. [See AR 14; see also AR 41]. Furthermore, "[t]he fact that Plaintiff may have to pass other people in a building or on the street going from one job site to another does not mean she would be interacting with the public." Hacker, 2013 WL 5886027, at *2; see Lair, 2013 WL 1247708, at *5 (holding that an RFC precluding public contact did not conflict with the duties of the DOT job of office helper, even though the duties of that position may require an employee to "deliver items to other business establishments" or to "deliver stock certificates and bonds within and between brokerage offices"); Baker v. Soc. Sec. Admin., 2011 WL 1298694, at *7 (D. Maine Mar. 31, 2011) (noting that the job of industrial cleaner does not require public interaction).

Moreover, the DOT description of the job of industrial cleaner does not require that an employee be able to perform all of the listed duties of the job, but rather "any combination" of them. See DOT job no. 381.687-018, available at 1991 WL 673258; see also Gleason v. Astrue, 2012 WL 4356244, at *5 (C.D. Cal. Sept. 21, 2012) (stating that "the DOT description for both kitchen helper and packer state that workers perform 'any combination' of the tasks listed, but do not state that a worker is required to perform all of them," and that "both job descriptions include multiple tasks that do not involve the use of a machine") (internal citations omitted); Dumble v. Astrue, 2011 WL 4502086, at *6 (C.D. Cal. Sept. 28, 2011) (establishing that "although the job description states that a hand packager performs 'any combination' of the tasks listed in the DOT, it does not state that a worker is required to perform all of them"). Additionally, the DOT job description for an industrial cleaner states that an employee "may" be required to perform the tasks of burning waste, cleaning incinerator, and operating an industrial truck. "When the word 'may' is used in a job description it only means that some establishments will require that job function; it does not mean that all employees will be required to perform that job function some of the time." Lair, 2013 WL 1247708, at *5; see also DOT, Parts of the Occupational Definition, § 5(c), available at 1991 WL 645965 ("The word 'May' does not indicate that a worker will sometimes perform this task but rather that some workers in different establishments generally perform one of the varied tasks listed.").

Accordingly, there was no conflict between the DOT and the VE's testimony that someone with plaintiff's limitations can perform the job of industrial cleaner.

**Dryer Attendant**

The DOT describes the duties of a dryer attendant as follows: "Hangs garments, such as skirts and

8

suits, on hooks suspended from chain conveyor that carries garments through curing oven to dry and cure finish applied to garment. Removes cured garments from conveyor onto rack for further processing." DOT job no. 581.686-018, available at 1991 WL 684215.

Plaintiff contends that the job of dryer attendant is precluded because her RFC limits conveyor belt work. Specifically, she contends that this job "would require [her] to hang garments on hooks suspended from chain conveyor and remove cured garments from conveyor onto rack." [JS 7]. It is unnecessary to determine whether the DOT job of dryer attendant requires "fast-paced" conveyer belt work that is precluded by plaintiff's RFC. As discussed above, the ALJ did not err in finding plaintiff could perform the DOT jobs of laundry laborer and industrial cleaner, and plaintiff's ability to perform those jobs is sufficient to support the ALJ's step-five finding.[3] [See AR 19, 41-42]. Thus, even if the ALJ erred in finding plaintiff could do the job of dryer attendant, the error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (stating that an "ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination") (internal quotation marks omitted); Gray v Comm'r of Soc. Sec. Admin., 365 Fed. Appx. 60, 63 (9th Cir. 2010) (holding that the ALJ did not err at step five, even if two of the three jobs named by the VE were inconsistent with the claimant's RFC, because there was no dispute that the third job was consistent with that RFC).

**Credibility finding**

Plaintiff contends that the ALJ failed to give sufficient reasons for rejecting her testimony regarding her subjective symptoms. [JS 10-15].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's

---

[3] The VE testified that there were approximately 300,000 laundry laborer jobs nationally and 2,000,000 industrial cleaner jobs nationally. [AR 42].

subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the December 20, 2013 administrative hearing, plaintiff testified that she is unable to work due to depression and bipolar disorder, and that she suffers from mood swings and paranoia. [AR 2829]. According to plaintiff, she gets "super overwhelmed" performing even easy tasks and is unable to finish anything. [AR 31]. The medications that she takes for her psychiatric conditions make her feel sleepy, and she has to take two or three naps a day. [AR 30]. She also has diabetes and "diabetic damage" to her right arm. As a result, she cannot fully lift up her right arm. [AR 29]. The maximum weight she can carry is 25 pounds, and she frequently loses her grip on things. [AR 33-34]. She further testified that she has a past history of drug and alcohol abuse, and that she had used methamphetamine eleven months earlier. However, she says that she has been sober since that time. [AR 27].

The ALJ gave legally sufficient reasons for rejecting plaintiff's credibility. First, the ALJ noted plaintiff's poor employment history.[4] [AR 14]. The Ninth Circuit has held that an ALJ may consider a claimant's poor employment history as part of a credibility determination. Thomas, 278 F.3d at 959; see

---

[4] The ALJ stated that plaintiff "has never worked, which raises some questions as to whether the current unemployment is truly the result of medical problems." [AR 14]. During the December 2013 hearing, plaintiff, who turned 47 that month, testified that the last time she did any kind of work was "like, in 2000," when she worked seasonally helping out in a friend's flower shop. [AR 26]. In her disability report, plaintiff stated that she had only one job during the 15 years before her alleged onset of disability on January 1, 2000, as a dishwasher and food server from 1991 through 1994. [AR 160]. Plaintiff's social security earnings record shows that from 1995 through 2013, she had annual earnings during only two years: $971 in 1998 and $1,804 in 2000. [AR 146].

also Drouin v. Sullivan, 966 F.2d 1255, 12581259 (9th Cir. 1992) (noting that the ALJ properly considered that the plaintiff stopped working for reasons other than her alleged pain). In Thomas, the ALJ found the claimant "show[ed] little propensity to work in her lifetime" given her "extremely poor work history." Thomas, 278 F.3d at 959. The Court observed the claimant's "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability in June of 1993." Thomas, 278 F.3d at 959. It found her poor work history was a "specific, clear and convincing reason[ ]" for discounting her pain testimony. Thomas, 278 F.3d at 959.

Similarly, plaintiff's disability report and earnings record shows that she has a poor employment history with years of unemployment even before her alleged onset date of January 1, 2000. [See AR 26, 40-41, 151, 160]. The ALJ could reasonably infer that plaintiff's sparse work history before her alleged onset of disability undermined her testimony that her inability to work after her alleged onset date was due to disability. [AR 14]. Therefore, the gaps in plaintiff's employment history before the alleged onset of disability are substantial evidence supporting the ALJ's adverse credibility finding. See Thomas, 278 F.3d at 959.

Second, the ALJ rejected plaintiff's credibility because "the objective medical evidence does not support the alleged severity of symptoms." [AR 18]. "Although lack of medical evidence cannot form the sole basis of discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 (noting that "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disability effects"). Here, no physician opined that plaintiff is as limited as she maintains or that she is disabled by her conditions. Rather, consultative examiner Dr. Robin Alleyne, a board-certified internist, examined plaintiff on March 26, 2012 and opined that plaintiff could perform medium work. [AR 195-199].

As for plaintiff's mental impairments, consultative examiner Dr. Khushro Unwalla, a board-certified psychiatrist, examined plaintiff on April 13, 2012. [AR 200-204]. Dr. Unwalla opined that plaintiff would have no limitations performing simple and repetitive tasks; mild limitations performing detailed and complex tasks; no difficulties performing work activities on a consistent basis without special or additional supervision; no limitations completing a normal workday or work week due to her mental condition; no

1  limitations accepting instructions from a supervisor and interacting with co-workers and with the public;
2  and no difficulties handling the usual stresses, changes, and demands of gainful employment. [AR 203].
3  Dr. Unwalla further noted that plaintiff has a problem with substance abuse, and that if she was "totally
4  abstinent from substance use/abuse then the limitations would improve." [AR 203].

5  Plaintiff was also examined by Dr. Linda M. Smith, a board-eligible psychiatrist. [AR 218-224].
6  Dr. Smith diagnosed methamphetamine and alcohol abuse of unclear status. Based on her examination, she
7  opined that, from a psychiatric standpoint, plaintiff was not impaired in her abilities. [AR 223-224].
8  Additionally, on May 29, 2012, a nonexamining state agency physician reviewed plaintiff's records and
9  concluded that she was only mildly impaired in some areas of functioning. [AR 51]. On March 26, 2013,
10 another nonexamining state agency physician opined that plaintiff would have mild limitations to activities
11 of daily living, and moderate limitations to social functioning and maintenance of concentration, persistence
12 or pace. [AR 65]. The ALJ properly relied on the lack of corroborating medical evidence as a factor in his
13 credibility assessment. See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (noting
14 that the medical evidence, including medical reports which found claimant could perform a limited range
15 of work, supported the ALJ's credibility determination).

16 Third, the ALJ noted that plaintiff "has not generally received the type of medical treatment one
17 would expect for a totally disabled person." [AR 15]. "[A] conservative course of treatment can undermine
18 allegations of debilitating pain." Carmickle, 533 F.3d at 1162; Orn v. Astrue, 495 F.3d 625, 638 (9th Cir.
19 2007). Here, with respect to her physical impairments, plaintiff alleged that, due to diabetes, she cannot
20 fully lift her right arm. [AR 29]. The record, however, contains little evidence that she sought treatment
21 for this condition.

22 The ALJ also drew an adverse inference about the credibility of plaintiff's subjective symptoms
23 because she merely took prescribed medications for her mental impairments and did not frequently visit the
24 doctor. [AR 15]. Plaintiff's failure to visit a doctor more frequently for mental health treatment is not a
25 clear and convincing reason for discounting her credibility. See Regennitter v. Comm'r of Soc. Sec.
26 Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999)(stating that "we have particularly criticized the use of
27 a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and
28 because 'it is questionable practice to chastise one with a mental impairment for the exercise of poor

judgment in seeking rehabilitation'") (quoting <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996)); <u>Blankenship v. Bowen</u>, 874 F.2d 1116, 1124 (6th Cir. 1989)(same).

The ALJ also erred in citing plaintiff's activities of daily living as a reason to find her not credible. [AR 15]. An ALJ may consider the claimant's daily activities as one of many factors in weighing a claimant's credibility. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008); <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989). A claimant, however, is not required to be "utterly incapacitated to be eligible for benefits" since "many home activities are not easily transferable to what may be the more grueling environment of the workplace." <u>Fair</u>, 885 F.2d at 603. Here, plaintiff testified that she could do laundry, cook, and go grocery shopping. [AR 35-36]. She also attends church and a drug recovery support group several times per month. [AR 27, 37-38]. Such limited daily activities do not reasonably detract from the alleged severity of her symptoms. See <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049-1050 (9th Cir. 2001) (stating that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453-1455 (9th Cir. 1984) (finding that cooking meals and washing dishes were not inconsistent with disabling leg and back pain).

Although the ALJ erred in citing plaintiff's daily activities and her failure to seek treatment for her mental impairments as reasons for rejecting her credibility, any error is harmless because the other reasons given by the ALJ are supported by substantial evidence and independently provide clear and convincing grounds to support the ALJ's ultimate credibility determination. See <u>Molina</u>, 674 F.3d at 1115 (noting that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record") (citing <u>Bray</u>, 554 F.3d at 1227 (holding that the ALJ's reliance on the claimant's continued smoking to discredit her subjective complaints was harmless error when the ALJ articulated four other reasons for discounting that were supported by the record); <u>Carmickle</u>, 533 F.3d at 1162-1163 (holding that the ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where remaining reasons were supported by substantial evidence); <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that where the ALJ articulated other reasons to support his negative credibility finding, "there was substantial evidence supporting the ALJ's decision," and any error

was harmless "and does not negate the validity of the ALJ's ultimate conclusion that [the claimant's] testimony was not credible")). Accordingly, the ALJ's credibility determination does not warrant reversal.

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

June 6, 2016

_____
ANDREW J. WISTRICH
United States Magistrate Judge